**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| HARRY WINSTON, INC., *et al.* | : | Case No. 2:08 CV 536 |
| Plaintiffs, | : | Judge Holschuh |
| v. | : | Magistrate Judge King |
| CHARLES WINSTON LUXURY GROUP LLC, *et al.* | : | |
| Defendants. | : | |

_____

**REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS OR TRANSFER FOR LACK OF PERSONAL JURISDICTION, INSUFFICIENCY OF PROCESS, AND IMPROPER VENUE OF DEFENDANTS CHARLES WINSTON LUXURY GROUP LLC AND LP WATCH GROUP, INC.**
_____

**I.  INTRODUCTION**

Despite Plaintiffs' scattershot approach in their Memorandum in Opposition to Defendants' Motion to Dismiss or Transfer (the "Opposition Brief"), Plaintiffs cannot avoid the fact that *neither* Defendant LP Watch Group, Inc. ("LP Watch") nor Defendant Charles Winston Luxury Group, LLC ("CWLG," collectively "Defendants") have contacts with Ohio sufficient to satisfy the rigorous requirements of Ohio's long arm statute and due process. Indeed, Plaintiffs *do not dispute* in their Opposition Brief that Defendants do not have sufficient contacts with Ohio to support *general* jurisdiction. Moreover, Plaintiffs have failed to satisfy their burden of establishing that this Court has *specific* jurisdiction over LP Watch or CWLG. Plaintiffs do not and cannot dispute that LP Watch and CWLG do not have any facilities or employees in Ohio and are not even registered to do business in Ohio. Most importantly, LP Watch and CWLG have not made *any* sales of "Charles Winston" branded products to any persons or entities based in Ohio, whether in person or through the

Internet. Accordingly, Plaintiffs' Complaint against LP Watch and CWLG should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In the alternative, this Court should transfer this case to the United States District Court for the Southern District of Florida, as LP Watch, CWLG, and the vast majority of witnesses are based in Florida.

## II. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER LP WATCH AND CWLG.

### A. The Alleged Ohio Contacts of Charles Winston and Charles Winston Enterprises Cannot Be Imputed to LP Watch or CWLG.

As a threshold matter, it is necessary to address a fundamental flaw with Plaintiffs' arguments regarding Defendants' alleged Ohio contacts. Apparently sensing that Defendants' alleged contacts are alone insufficient to establish jurisdiction for purposes of Ohio's long arm statute and due process, Plaintiffs summarily lump into their analysis the alleged Ohio contacts of Charles Winston Enterprises, LLC ("Charles Winston Enterprises"), a California limited liability company, and Mr. Charles Winston that took place *prior* to CWLG's incorporation and acquisition of the intellectual property relating to "Charles Winston" in January 2007. These alleged contacts, even if true, are irrelevant to an analysis of whether this Court has jurisdiction over LP Watch and CWLG, as Charles Winston Enterprises and Charles Winston were not affiliated with LP Watch or CWLG prior to January 2007 and their pre-January 2007 contacts cannot be imputed to CWLG and LP Watch.

The contacts of Charles Winston Enterprises and Charles Winston can be imputed to Defendants only upon a showing that Defendants are liable for the obligations of Charles Winston Enterprises and Mr. Winston such that Defendants can be considered "successors" of Charles Winston Enterprises and Mr. Winston under Ohio law. *See In re*

2

*Cordis Corp. Pacemaker Prod. Liab. Lit.*, Case Nos. C-3-86-543, C-3-90-374, 1993 U.S. Dist. LEXIS 21296, at *42 (S.D. Ohio) (Exhibit D).  Plaintiffs, however, have not alleged any successor liability claims against CWLG or LP Watch in their Amended Complaint, and the facts here do not support any theory of jurisdiction over CWLG or LP Watch based upon successor liability.

Quite to the contrary, LP Watch and CWLG never agreed to assume the liabilities of Charles Winston Enterprises or Mr. Winston.  In January 2007, LP Watch participated in the formation of CWLG, a Florida limited liability company.  (First Declaration of David Koss ("Koss Declaration 1"), at ¶ 12, attached as Exh. A to Defendants' Motion to Dismiss.)  CWLG was formed to purchase certain assets of Charles Winston Enterprises, including its trademarks and intellectual property.  (*Id.*)  CWLG, however, did not purchase the obligations or the liabilities of Charles Winston Enterprises.  (Second Declaration of David Koss ("Koss Declaration 2"), at ¶ 4, attached hereto as Exh. A.)

Plaintiffs rely on *OMS Investments v. Regenerated Resources*, No. C2-06-114, 2008 U.S. Dist. LEXIS 26766, at *21 (S.D. Ohio) (Exhibit E) in support of their argument that there is somehow jurisdiction in Ohio over Defendants on the basis of the alleged contacts of Mr. Winston and Charles Winston Enterprises.  OMS, however, does not support jurisdiction over either LP Watch or CWLG, as two facts vital to the outcome of that case are *not* present here:  (1) the acceptance of trademark assignments by an assignee with complete knowledge that the marks were subject to pending litigation and (2) a sham-like transfer of the trademarks.

In *OMS*, the plaintiff filed an action against Regenerated Resources for trademark infringement and dilution, among other claims, related to Regenerated's application for, and

3

use of, two trademarks. Shortly before the lawsuit was filed, an insolvent Regenerated closed for business. Two months *after* the filing of the lawsuit, a new corporation, BBG, was organized with the *same investors* as those of Regenerated. BBG acquired the Regenerated trademarks via a quit-claim bill of sale for $5,000 from the party which owned a security interest in the marks, and Regenerated assigned its ownership of the marks to BBG. The shareholders of BBG were aware of the pending lawsuit at the time BBG acquired the marks.

The Plaintiff then brought claims in the Ohio lawsuit against BBG under a theory of successor liability. BBG, which did not advertise in Ohio (or elsewhere), did not target communications or other materials to Ohio and had no offices, directors, officers, or employees in Ohio and accordingly moved to dismiss the lawsuit for lack of personal jurisdiction. The court found, however, that the plaintiff made a *prima facie* case of jurisdiction against BBG "[b]ecause an assignee steps into the shoes of its assignor, the assignee [therefore] is subject to the personal jurisdiction of a court in ***pending trademark infringement litigation against the assignor***." *Id.* (emphasis added); *see also* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:15 & n. 14 (2008) (cited by the *OMS* court and also noting that an assignee is subject to personal jurisdiction of court only where assignee accepts assignment with knowledge of pending infringement litigation against assignor). The court also noted that jurisdiction was appropriate because BBG engaged in business negotiations in Ohio regarding the trademarks and accepted the assignment of the trademarks with knowledge that they were subject to on-going litigation in Ohio. *Id.* at *19.

4

None of these facts, however, are present here. When Charles Winston Enterprises assigned the trademarks to CWLG in January 2007, there was no trademark infringement litigation pending in Ohio against Charles Winston Enterprises. Indeed, the present litigation was not commenced until June 2008 – over a year and a half *after* the assignment. Therefore, CWLG cannot be said to have known that it was taking the marks subject to litigation in Ohio. Plaintiffs also make no claim (nor can they) that CWLG or LP Watch engaged in any negotiations in Ohio with respect to the purchase of the trademarks and other assets of Charles Winston Enterprises.[1] (Koss Declaration 1 at ¶ 12.)

That Plaintiffs amended their complaint here to also include as a defendant, C.W.E. Consulting, LLC ("C.W.E. Consulting"), a Florida limited liability company also apparently controlled by Mr. Winston, does not cure this defect, as Plaintiffs asserted their claims against this entity long after the asset transfer from Charles Winston Enterprises was completed, and Plaintiffs have since dismissed their claims against C.W.E. Consulting such that there is no longer "pending trademark infringement litigation" against C.W.E. Consulting. Where a trademark is not the subject of a pending lawsuit in Ohio, merely accepting an assignment does not permit the alleged Ohio contacts of the assignor to be imputed to the assignee. Accordingly, the contacts of Charles Winston or Charles Winston Enterprises (or C.W.E. Consulting, for that matter) cannot be considered in determining whether jurisdiction over LP Watch or CWLG is appropriate.

---

[1] Plaintiffs also cite *Westco Group, Inc. v. K.B. Assoc., Inc.*, 128 F. Supp. 2d 1082 (N.D. Ohio 2001) in support of their proposition that Charles Winston and Charles Winston Enterprises' contacts, if any, with Ohio can be imputed to LP Watch and CWLG. Jurisdiction, however, was not at issue in *Westco* and the case is accordingly not instructive on the issue of personal jurisdiction.

5

**B. Ohio's Long Arm Statute Does Not Authorize the Exercise of Jurisdiction over LP Watch and CWLG.**

Plaintiffs principally focus their Opposition Brief on their claim that LP Watch and CWLG are somehow subject to jurisdiction under Ohio's long arm statute, R.C. 2307.382(A). Specifically, Plaintiffs cite three sections of the statute as applying to the present case, claiming that LP Watch and CWLG somehow transacted business in Ohio under section (A)(1), contracted to supply services or goods in Ohio under section (A)(2), and have somehow caused a tortious injury in Ohio by an act or omission in this state under section (A)(3). Ohio's long arm statute, however, is simply inapplicable under the facts of this case.

**1. Defendants Have Not Caused a Tortious Injury in Ohio by an Act or Omission in Ohio, as Required by R.C. 2307.382(A)(3).**

As an initial matter, Section (A)(3) does not apply because Plaintiffs' alleged injury—trademark infringement, dilution, or unfair competition—did not occur in Ohio. By its terms, section (A)(3) requires *both* the alleged tortious act and injury to occur in Ohio. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002) ("To satisfy (A)(3), both the tortious act and the injury must occur in Ohio.") (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)); *see also Gore-Vue Corp. v. Hornell Elekrooptik AB*, 634 F. Supp. 535, 537 (N.D. Ohio 1986). The injury of trademark infringement, dilution, or unfair competition occurs "where the plaintiff does business and in the state where its primary office is located." *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002). Here, Plaintiffs Harry Winston, Inc. and Harry Winston, S.A. are New York and Swiss companies, respectively. As mentioned in Defendants' Motion to Dismiss, courts have relied upon this rule to find jurisdiction where Plaintiffs are organized in a state or focus their business activity in a

6

particular state.  *Id.* at 869, 876 (plaintiff, an individual, was citizen of Ohio) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("defendant's trademark violations 'had the effect of injuring Panavision in California where Panavision had its principal place of business and where the movie and television industry is centered'") and *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1127 (W.D. Pa. 1997) (noting injury occurred in Pennsylvania because plaintiff was a Pennsylvania corporation)).  Accordingly, any injury to Plaintiffs would have been sustained in either the state where Plaintiffs are organized or the state in which they primarily focus their business.  *Id.*; *Panavision Int'l,* 141 F.3d at 1322.  Plaintiffs, however, neither focus their business in Ohio nor are they organized in Ohio, as Harry Winston, Inc. and Harry Winston, S.A. are organized in New York and Switzerland, respectively, and Plaintiffs make no claim that they focus their business in Ohio more than any other state.  Quite to the contrary, Plaintiffs suggest in their Amended Complaint that they concentrate their business in locales where celebrities and the super rich mingle, such as Hollywood, California and Fifth Avenue, New York, and not Ohio.

Plaintiffs suggest that the requirements of (A)(3) are met because Defendants allegedly sold infringing product in Ohio and that "an act of trademark infringement occurs where the sale of the infringing product occurs."  However, this is only half of the equation.  Plaintiffs must demonstrate that *both* the alleged tortious act and injury took place in Ohio.  Pursuant to the Sixth Circuit's decision in *Bird*, Plaintiffs' injury, if any, did not take place in Ohio.  Accordingly, Plaintiffs have failed to satisfy the requirements of Section (A)(3).

### 2. Plaintiffs' Alleged Injury Does Not Arise out of Any Goods and Services Provided by Defendants in Ohio, as Required by R.C. 2307.382(A)(2).

Plaintiffs further claim that jurisdiction is purportedly proper under Section (A)(2) because LP Watch and CWLG provide warranty services to Ohio residents. These warranty services, however, cannot provide this Court with a basis to exercise jurisdiction over LP Watch and CWLG. While Section (A)(2) permits courts to exercise jurisdiction over a defendant who contracts to provide goods and services in Ohio, Section (A)(2) only applies to an injury *arising out of* such contacts. *See* R.C. 2307.382(C). Ohio's requirement that an injury arise out of the acts specifically enumerated in the long-arm statute is more rigorous that the due process requirement that a plaintiff's injury and cause of action "arise out of" the defendant's contacts with the forum state, as Ohio requires a showing that the injury *proximately* resulted from the contacts, as opposed to a "but for" connection under a due process analysis. *Burnside Development, LLC v. Cliffs Reduced Iron Corp.*, No. 04-4383, 2006 U.S. App. LEXIS 21889 at **12 (6th Cir.) (Exhibit F).

Plaintiffs' alleged injuries, however, do not arise out of any warranty services provided by LP Watch and CWLG, but instead arise out of LP Watch and CWLG's alleged *sale* of purported infringing "Charles Winston" branded products. Nowhere in Plaintiffs' Amended Complaint is there any allegation that the provision of warranty services by LP Watch or CWLG resulted in any trademark infringement, dilution, or unfair competition. Indeed, Plaintiffs cannot make such an argument, as courts have held that a trademark infringement claim does not "arise out of" a warranty. *See Sunshine Distribution, Inc. v. The Sports Authority Michigan, Inc.*, 157 F. Supp.2d 779, 785 (E.D. Mich. 2001) (noting that infringement and unfair competition action did not "arise out of" warranty).

Plaintiffs erroneously rely upon the decision in *Morgan Adhesives Co. v. Sonicor Instr. Corp.*, 107 Ohio App.3d 327, 668 N.E.2d 959 (9 Dist. 1995) in support of their contention that Section (A)(2) of the Ohio long arm statute somehow applies by mere virtue of the fact that LP Watch and CWLG provided warranty services.  In that case, the plaintiff brought claims against the defendant manufacturer arising out of defective machinery sold by the defendant, including claims of breach of express and implied warranties. *Id.* at 331. Thus, unlike the present case, the alleged injury in *Morgan Adhesives* directly arose out of the defendant's provision of a warranty to Ohio residents.  As Plaintiffs' alleged injury does not arise out of any warranty services provided by LP Watch or CWLG, Section (A)(2) of the long arm statute does not apply to extend jurisdiction over LP Watch or CWLG.

### 3. Defendants Have Not Transacted Business in Ohio Within the Meaning of R.C. 2307.382(A)(1).

Plaintiffs have also failed to prove that LP Watch and CWLG "transacted" any business with any Ohio residents or entities within meaning of Section (A)(1) of Ohio's long arm statute.  Plaintiffs argue that, because some LP Watch and CWLG product eventually ends up in the hands of Ohio consumers through sales to retailers, such as Overstock, Shop NBC, and Amazon, which sell products online, as well as to Target, that this is somehow sufficient to satisfy the "transacting business" requirement of (A)(1).[2]  The alleged conduct of LP Watch and CWLG, however, is insufficient to constitute the "transacting of business" within the meaning of Section (A)(1).  As set forth in the Declaration of David Koss, LP Watch and CWLG do not sell *any* Charles Winston-branded product to any persons or entities located in Ohio, a fact that is not disputed by Plaintiffs.  LP Watch and CWLG solely deal with Target, Overstock, Shop NBC, and Amazon at their respective

---

[2] Contrary to Plaintiffs' suggestions in their Opposition Brief, LP Watch and CWLG do not sell product to Filene's Basement, emitations.com, or eBay.com.  (Koss Declaration 2 at ¶¶ 10-12.)

headquarters, *all of which* are located in states other than Ohio. (*See* Koss Declaration 2 at ¶¶ 7-9; Koss Declaration 1 at ¶ 20.) LP Watch and CWLG sell their product directly to these corporate entities and these corporate entities issue payment for the product directly to LP Watch and CWLG from the entities' corporate headquarters. (Koss Declaration 2 at ¶¶ 7-9; Koss Declaration 1 at ¶ 20.)

LP Watch and CWLG do not receive *any* orders or payments directly from customers based in Ohio. (*Id.*) The only contact LP Watch and CWLG have with anyone in Ohio is that they will, on occasion, drop ship product at the request and direction of Overstock and Shop NBC directly to their customers. (Koss Declaration 2 at ¶¶ 7, 9.)[3] LP Watch and CWLG have no discretion in determining when and where product is to be drop shipped-- the individual retailers make that decision and send LP Watch and CWLG the shipping instructions, when and if the retailers require such shipments. (*Id.*)

Such conduct does not constitute "transacting business" within the meaning of Section (A)(1). The Supreme Court of Ohio has noted that the term "transacting" in Section (A)(1):

> means to prosecute negotiations; to carry on business; to have dealings. The word embraces within its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion.

*Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990). Implicit in this definition is that there must be some type of two-way negotiations or dealings between an out of state entity and persons and entities located in Ohio. *Id.* (addressing back and forth negotiations of lease between Kentucky and Ohio). This is entirely lacking

---

[3] In fact, LP Watch and CWLG did not even begin drop shipping any products for Shop NBC until September 2008, well after this litigation was filed. Prior to September 2008, *all* products sold to Shop NBC were shipped directly to Shop NBC's headquarters in Minnesota.

10

in the present case. CWLG and LP Watch have *no* contact with Ohio customers with regard to the sale of the products. CWLG and LP Watch do not solicit or receive orders or payments from any Ohio customers. CWLG and LP Watch instead deal with retailers based outside of Ohio and occasionally, when requested by some of the online retailers, ship product to Ohio at the time and address specified by the retailers. Without any back and forth transactions between Defendants and any Ohio-based persons or entities, CWLG and LP Watch's sales to Ohio simply do not constitute the transacting of business within the meaning of Section (A)(1).

Plaintiffs also cite *Morgan Adhesives Co. v. Sonicor Instr. Corp.*, 107 Ohio App.3d 327 (9 Dist. 1995) for the proposition that, even if CWLG and LP Watch do not sell any products to Ohio-based consumers, Section (A)(1) would nonetheless apply if "Ohio appears to be a continuous market for the eventual 'landing' of [the defendant's] products." However, *Morgan Adhesives* is inapposite to the present case. As mentioned above, that case did not involve a claim of trademark infringement, but was instead a product liability action with express and implied warranty claims. The court found dispositive the fact that, not only did the defendant's products end up in Ohio, but the defendant extended a warranty over the products. As the injury to the Ohio-based plaintiff directly arose out of the defendant's alleged breach of warranty, jurisdiction over the defendant in that case was appropriate under Section (A)(1) and R.C. 2307.382(C).

While LP Watch and CWLG may have performed warranty services for Ohio residents, as mentioned above, Plaintiffs' alleged injury does not arise out of any warranties offered by LP Watch and CWLG. Therefore, the warranty services cannot be considered in determining whether Plaintiffs' injury arises out of any transaction of business by LP Watch

11

and CWLG in Ohio within the meaning of Section (A)(1).  *Brunner v. Hampson*, 441 F.3d 457, 467 (6th Cir. 2006) (noting that Ohio's long arm statute did not provide jurisdiction over Canadian company because plaintiff's injuries did not arise out of company's contacts with Ohio).  Accordingly, this case does not present a situation, as in *Morgan Adhesives*, where product not only ends up in Ohio, but *also* is accompanied by a warranty, the breach of which forms the basis of plaintiff's claim of injury in the lawsuit.[4]  LP Watch and CWLG simply have not engaged in any "transactions" in Ohio within the meaning of Section (A)(1).  Accordingly, this Court does not have jurisdiction over LP Watch and CWLG under Ohio's long arm statute.

      **C.**    **Jurisdiction over LP Watch and CWLG Is Improper Under the Due Process Clause.**

Even if Ohio's long arm statute somehow applied to Plaintiffs' claims against LP Watch and CWLG, the exercise of jurisdiction over LP Watch and CWLG still would violate due process.  As mentioned above, at the end of the day, the only Ohio contact Plaintiffs can point to is that some of LP Watch and CWLG's products ended up in the hands of individuals in Ohio.  However, "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Bridgeport Music, Inc. v. Still N the Water Publishing*, 327 F.3d 472, 479 (6th Cir. 2003) (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (O'Connor, J.)).

As set forth in the declaration of David Koss, LP Watch and CWLG have not purposefully availed themselves of Ohio, as they merely provide products to third party

---

[4] Similarly, Plaintiffs' reliance upon *Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.*, No. C-2-00-1190, 2000 U.S. Dist. LEXIS 20168 (S.D. Ohio) (Exhibit G) is misplaced, as the defendant in that case actually made *direct* sales to Ohio-based stores and Plaintiff itself was an Ohio-based company.  *See id.* at *12-*13.

12

retailers located in states other than Ohio. (*See, e.g.*, Koss Declaration 2 at ¶¶ 7-9.) LP Watch and CWLG do not require the retailers to sell product in particular locations. (*Id.* at ¶ 15.) To the extent LP Watch and CWLG drop ship product to third party retailers' customers who may be located in Ohio, it is done at the request of the out-of-state retailers, and LP Watch and CWLG have no discretion in determining to whom and where the product should be shipped. (*Id.* at ¶¶ 7, 9.) *See Irizarry v. East Longitude Trading Co.*, 296 F. Supp. 2d 862, 865 (N.D. Ohio 2003) (foreign defendant does not purposefully avail itself of Ohio's forum even where defendant's distributor sold more than two million dollars of defendant's products in Ohio, as there was no evidence that defendant "designed its products expressly for the United States or Ohio markets" and defendant retained no control over how or where its distributor sold the products).

These circumstances accordingly render Plaintiffs' reliance upon *Tobin v. Astra Pharmaceutical Products*, 993 F.2d 528, 543 (6th Cir. 1993) misplaced. In *Tobin*, the Court concluded that jurisdiction was proper over a defendant manufacturer, even though the defendant did not sell any products in the forum state. However, the Court in *Tobin* found significant the fact that the defendant contractually required the distributor to market its product in "the United States of America its territories and possessions, and Puerto Rico." *Id.* at 543. In the present case, LP Watch and CWLG do not have any agreements with their retailers *requiring* those retailers to sell product nationwide or in any particular forum and Plaintiffs have not suggested as much. (Koss Declaration 2 at ¶ 15.) Although some of the retailers with whom LP Watch and CWLG do business can conceivably sell product anywhere in the United States, merely knowing that a distributor sells product nationally and not objecting to such national sales is *not* sufficient to constitute purposeful availment

13

for the purposes of due process. *See Bridgeport Music*, 327 F.3d at 480 (mere fact defendant knows its product will likely be marketed nationally insufficient to constitute purposeful availment and distinguishing *Tobin* on grounds that distributor in *Tobin* was contractually required by defendant to distribute products nationwide).

Plaintiffs' claim that the third prong of the test in *Southern Machine Co. v. Mohasco Industries*, 401 F.2d 374, 381 (6th Cir. 1968)--that the acts of defendant or consequences caused by defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable--is somehow satisfied by the facts of this case is also incorrect. Ohio simply has no particular interest in having this dispute litigated here. Indeed it is curious that this litigation is even pending in Ohio, as *none* of the parties to this litigation are headquartered in Ohio, have operations in Ohio, or employ any individuals in Ohio. Moreover, Plaintiffs' claim that Harry Winston has somehow been injured in Ohio is simply not true, as Plaintiffs' are not based in Ohio, have produced *no evidence* that they particularly concentrate their business activities in Ohio, and therefore cannot claim they were injured in Ohio. *Byrd*, 289 F.3d at 876.

Defendants are both Florida corporations, maintain their principal places of business in Florida, and their witnesses are all located in Florida. Requiring Defendants to litigate this case in Ohio has and will continue to be unduly burdensome on Defendants, particularly where none of the evidence relevant to the parties' claims and defenses is located in Ohio. (Koss Declaration 1 at ¶¶ 13, 25.) The *only* connection to Ohio is the fact that Plaintiffs' counsel is located in Columbus and can easily walk to the courthouse. This cannot override the heavy burden on Defendants in litigating in Ohio, as well as Plaintiffs'

14

minimal relationship with Ohio.  Accordingly, this Court lacks personal jurisdiction over LP Watch and CWLG.

### III. THIS COURT SHOULD TRANSFER VENUE TO THE SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404(a).

Plaintiffs also challenge LP Watch and CWLG's contention that venue is improper under 28 U.S.C. § 1391(b).  However, even assuming that venue is permissible under Section 1391(b), justice still requires that this Court transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  As mentioned above, *none* of the parties to this case are incorporated, maintain their principal place of business, or have any employees in Ohio.  Plaintiffs were not injured in Ohio and no evidence or witnesses are likely to be found in Ohio.  Defendants, however, are both Florida corporations and have their principal place of business in Florida.  As such, the majority of the witnesses in this litigation are located in Florida.  In fact, *all* of the witnesses disclosed by LP Watch and CWLG in their initial disclosures are based in Florida. (*See* Defendants' Initial Disclosures, attached hereto as Exhibit B.)  Even Plaintiffs' initial disclosures indicate that two out of three witnesses they listed, Barry L. Haley and Charles J. Winston, are located in Florida. (*See* Plaintiffs' Initial Disclosures, attached hereto as Exhibit C.)

It simply makes no sense for the parties to be forced to litigate this case in a forum bearing little to no connection to the parties and to incur the expense of conducting discovery in Florida and transporting witnesses back and forth between Ohio and Florida so Plaintiffs can litigate this case in their counsel's back yard.  Indeed, as Plaintiffs are already litigating this case far from their headquarters in New York and Switzerland, a transfer of venue to the Southern District of Florida will not pose an additional burden on Plaintiffs and

will instead inure to Plaintiffs' benefit by having the court proceedings and the majority of witnesses in one location.

Perhaps recognizing the dubious appropriateness of venue before this Court, Plaintiffs suggest that, if there is a transfer of venue, the case should be transferred to New York because Plaintiffs' U.S. headquarters is in New York and because LP Watch is purportedly based in New York. New York, however, is not superior to the Southern District of Florida for venue purposes. Contrary to Plaintiffs assertions, LP Watch and CWLG, *are* incorporated and headquartered in Florida. (Koss Declaration 1 at ¶¶ 2, 14.) As evidenced by Defendants' initial disclosures, Defendants' principal officers are located in Hollywood Florida and all of Defendants' witnesses are based in Florida.[5] (*See* Defendant's Initial Disclosures.) Only *one* witness disclosed by Plaintiffs, their Chief Financial Officer, Robert Scott, is based in New York. For Plaintiffs to suggest that New York is somehow the most appropriate venue for this case on the basis that their U.S. headquarters is in New York and one witness resides there is absurd. Accordingly, this Court should transfer venue to the Southern District of Florida.

## IV. CONCLUSION

Jurisdiction over LP Watch and CWLG is not permissible under Ohio's long arm statute and due process. Accordingly, this Court should dismiss Plaintiffs' Complaint for lack of personal jurisdiction. In the alternative, LP Watch and CWLG respectfully request that this Court transfer this matter to the United States District Court for the Southern District of Florida.

---

[5] For Defendants to suggest that the headquarters of LP Watch and CWLG is anywhere other than Hollywood, Florida is disingenuous, given that Defendants sought to depose LP Watch's CEO and CWLG's COO, David Koss, on the jurisdictional issues in Florida.

<table>
<tr><td>

OF COUNSEL:

Franklin L. Zemel
ARNSTEIN & LEHR LLP
200 East Las Olas Blvd., Suite 1700
Fort Lauderdale, Florida 33301
Tel: (954) 713-7610
Fax: (954) 713-7710
flzemel@arnstein.com

</td><td>

Respectfully submitted,

/s/ Kathryn K. Przywara
_____
Kathryn K. Przywara (0043730)
Peter J. Georgiton (0075109)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
kathryn.przywara@dinslaw.com
peter.georgiton@dinslaw.com

*Attorneys for Defendants Charles Winston Luxury Group, LLC and The LP Watch Group.*

</td></tr>
</table>

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing has been filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court system.

        /s/ Kathryn K. Przywara
        _____
        Kathryn K. Przywara (0043730)

        *Attorney for Defendants Charles Winston Luxury Group, LLC and The LP Watch Group*